## Enoch Patterson Junior *versus* The City of Boston.

Soon after the commencement of a lease for three years, of a warehouse or store in
Boston, in which lease the lessee covenanted to pay the rent during the term and to
leave the premises in good repair, the city took the front part of the land on which
the building stood, and cut down the front wall, for the purpose of widening the
street. The building remained in this condition about two years, when the lessor
took it down and erected a new store on the same site, but diminished by the strip
of land taken by the city. Before the wall was taken down, the lessee removed
into another store, and remained there until the new one was erected, when he re-
moved back to the new one. In a complaint by the lessee against the city for
damages, it was *held*, that the plaintiff was entitled to recover the expenses of re-
moving his goods from and back to his original place of business, and for the loss
of earnings for the few days occupied in such removals, and a reasonable sum for
the rent of another store for so long a time as would reasonably have been required
for putting up a new front wall ; (or, if he had suspended his business, that he
might have recovered for the loss of earnings during a reasonable time for rebuild-
ing the wall ;) that he had a right forthwith to rebuild the wall, carrying it up to
the roof, and if he had done so, inasmuch as he could not have compelled a con-
tribution from the lessor, he would have been entitled to recover the whole cost from
the city ; but that as he did not in fact put up the wall, but left the lessor to make his
full claim of damages on the city, he could recover only such proportion of the estі

mated expense as his interest (regard being had to the portion of the store occupied by him and the time which his lease had to run) bore to the value of the whole estate.

THIS was a complaint, in which the plaintiff sought to re cover compensation for an injury sustained by him from the act of the defendants, in taking down part of a warehouse or store, for the purpose of widening Doane street, in the city of Boston.

At the trial, before *Shaw* C. J., it appeared that the ware-house was owned by Elisha Parks ; who leased the lover story and cellar to the plaintiff, and the second and part of the third story to Barnard & Dutch ; the remainder of the third story being occupied by Parks himself.

By the provisions of the plaintiff's lease he was to hold for the term of three years from the 1st of January, 1829, to pay an annual rent of $725, with a certain addition for repairs and improvements, and all taxes, during the term, and to quit and deliver up the premises at the end of the term, in as good order and condition, reasonable use and wear and loss by fire only excepted, as the same might be put into by the lessor. The lease to Barnard & Dutch was for seven years from the 3d of September, 1823, at a yearly rent of $500, with a like covenant to deliver up the premises in good order at the end of the term. The lessor covenanted to keep the roof and other parts of the warehouse in good tenantable repair.

The defendants, on the 5th of March, 1829, took and appropriated to the public use, for the purpose of widening Doane street, a strip of land belonging to Parks, on which his warehouse partly stood ; and on the 13th of July following, they took down and removed so much of the warehouse as stood on the land so taken.

The plaintiff vacated the warehouse at some time between the 1st and 13th of July, 1829, and removed his goods to a warehouse in Kilby street, which he occupied until the 20th of August, 1831. He then removed into a new warehouse erected by Parks on the site of his old one, reduced by the quantity of land taken by the defendants. The rent paid for the warehouse in Kilby street did not appear.

Among the claims made by the plaintiff was this ; that in his lease he had covenanted to repair and restore the ware-

house, in as good order as he received it, casualty by fire only excepted, and that in a settlement with Parks he had paid him, by note, $600 or $700 in satisfaction of the breach of that covenant. But it was further shown, that the note had not been paid and that it was still held by Parks.

Upon this it was ruled, that the plaintiff was not bound, by this covenant, to make good to his landlord, any losses occasioned by the legitimate authority of the city government in taking part of the building, and that what the plaintiff had paid under this covenant, if any thing, was not of itself a ground of claim against the city.

Witnesses were called by the plaintiff, to testify to the amount which it would have cost to rebuild the wall on the new line of the street and fit the building for re-occupation by the plaintiff. This evidence was objected to by the defendants, but admitted. Whereupon evidence was offered on both sides, as to the cost of such wall, the length of time it would have taken to erect it, and the height to which it would have been necessary to carry it, in order to make the tenement of the plaintiff safe and convenient for his business.

The defendants offered to prove, that in point of fact the building was not so repaired, but that after standing some time open on the side of the street, and unoccupied, the whole building was taken down and a new one was erected on the same site by Parks, and was ready for occupation in September 1831 ; that Parks brought his suit against the defendants, making various claims for damages, and recovered a judgment for the cost of building the wall, which judgment was satisfied by the defendants.

Upon this offer it was ruled, that the evidence was not admissible ; but that if Parks had rebuilt the wall, and it enured to the plaintiff's benefit, so as to enable him to enjoy the residue of his term, and if the expense of such rebuilding had been charged to and paid by the defendants, it would be a good answer to this part of the plaintiff's claim, and that without any regard to his covenant with his lessor.

It was also suggested, in regard to this offer, that if the defendants relied upon the rebuilding of a new warehouse and damages for the cost of the same, in whole or in part, allowed to Parks in his suit against the defendants, as a satisfaction of

the damages of the plaintiff's leasehold interest, then it would be proper for the plaintiff, inasmuch as he was not discharged by the taking of part of the leasehold estate for public use, from his covenant to pay the rent during the whole term, to recover his whole or gross rent from July 1829, when he left the warehouse, to September 1831, when the new warehouse was completed ; a sum which would probably exceed the estimated cost of rebuilding the wall of the old warehouse and the loss of full rent whilst it was doing.

To the rejection of the above evidence the defendants objected.

The jury were instructed that the plaintiff was entitled to recover ; —

1. The full value of the rent from the 13th of July, 1829, for such reasonable time as it would have taken to rebuild the wall, repair the building, and replace his goods in it, ready to proceed with his business ; but that he was not entitled to recover for the whole time until Parks rebuilt.

2. For the reduction of the dimensions of the warehouse, and the consequent diminution of its value, from the time when it could reasonably have been finished and ready for occupation, until the end of his term ; deducting however any benefit which his tenement would have derived from being on a wider street, having lighter cellars, and coal arches under the sidewalk.

3. The expenses of removing his goods from the warehouse and back again, and the damage, if any, which would be done to the goods. Also any loss of custom and probable profits of business for such length of time as he must necessarily have been kept out of the warehouse by the repairs, taking into consideration the season of the year and the circumstances of the case.

It was suggested under this head, that the true measure was, the probable loss of custom and business, arising from the necessity of removal, during the period it would have required to make the repairs ; that in making the estimate, it seemed to be right to consider what would be the loss of business, interest on capital, &c. supposing his business to be suspended during the necessary time the repairs were going on ; or if it was an

object to avoid such suspension and continue his business in the mean time, he must hire another warehouse and pay another rent, at the same time he was obliged by his covenant to pay rent to Parks.

4. The amount of what would have been the cost of the necessary repairs, including the wall on the street, to put the warehouse in a proper and safe condition for the plaintiff's business.

Under this head the jury were' instructed, that the plaintiff was entitled to recover the costs of restoring his own part of the building to a tenantable condition; and for this purpose, to include the expense of carrying up the wall to the roof, so as to shut out the wind and rain and render his own part of the warehouse tenantable, without regard to the liability of Dutch & Barnard, tenants of the rooms above under a lease then nearly expired.

The jury were instructed to allow interest from the time when the money would have been expended, to the date of the verdict.

The jury returned a verdict for the plaintiff, for the sum of $ 2941·42, composed of the following items : —

| | | |
|---|--:|--:|
| Expenses of removal, loss of business, and rent of another store | $ 503·49 | |
| Interest on the same | 276·33 | |
| | | 779·82 |
| Loss of rent for the time it would have taken to rebuild the wall | 192·56 | |
| Interest | 105·66 | |
| | | 298·16 |
| Damage by reduction of size of the store for the residue of the time | 607·50 | |
| Interest | 287·91 | |
| | | 895·41 |
| For building wall | 625·00 | |
| Interest | 343·03 | |
| | | 968·03 |
| | | $ 2941·42 |

The jury apportioned the building of the wall as follows : —

| | |
|---|--:|
| Cellar and lower floor | $ 375·00 |
| Second floor | 125·00 |
| Third floor | 125·00 |
| | 625·00 |

The defendants moved for a new trial on the ground of misdirection to the jury.

*J. Pickering*, City Solicitor, and *C. P. Curtis*, in support of the motion, objected to the first item, of $ 503·49, and the last, of $ 625. They cited *Patterson* v. *Boston*, 20 Pick. 159.

*B. Rand* and *Dexter*, for the plaintiff. In regard to the last item, they said that the plaintiff could not repair the wall, without carrying it up to the roof; that if the defendants contended he was bound to repair without delay, then they must allow him either the whole sum which it would have cost to make the repairs, or the loss of earnings during the whole time that he was out of the store, or the rent of another store during that period.

SHAW C. J. delivered the opinion of the Court. The general principle upon which damage is to be assessed, in favor of one whose property has been appropriated to public use, is extremely well settled ; it must be an adequate compensation, a fair equivalent, a just indemnity. But the application of this principle, plain and simple as it is, to particular cases, is often attended with difficulty, on account of the great diversity of circumstances attending them. This case was formerly before the Court, and the result is reported in 20 Pick. 156. It was again submitted to a jury, upon the grounds therein stated, and a verdict was returned for the complainant for about $ 3000. Two exceptions are now taken to the verdict, on the part of the city. The first is, that the jury were instructed, that amongst other items of damage, they might, in addition to the expenses of the removal of the goods from the store and removal back, allow the complainant for the loss of the earnings and profits of his business, whilst it was necessarily suspended, or the rent of another store in the mean time for carrying it on.

The Court are of opinion that this direction was right. Conformably to the principle laid down in the former case between these parties, the direction was intended to exclude imaginary or speculative losses of the complainant, arising from the removal, occasioned by customers leaving him and resorting to other stores, loss of good-will, run of custom and the like. It was intended to embrace that average rate of earnings which a

man in business, with a stock of merchandise on hand, may be supposed temporarily to lose, for the actual time that his business is necessarily suspended, taking into consideration the nature of the business and season of the year. If it would be on the whole a less damage, considering the probable length of time that the business would be suspended, the season of the year and the nature of the business, to take another store in the neighbourhood and continue the business, then instead of the loss of earnings during such suspension, it would be most beneficial, both to the merchant and to the city, who must pay the actual damage, to allow the rent of another store, and the necessary expenses.

But it is contended that the jury allowed both, which was contrary to the direction. We think this does not appear, taking into consideration the verdict as they have returned it, and the memorandum in which they made their computations. The jury were directed that they were not to allow both loss of daily earnings during the period of necessary suspension, and the rent of another store too. And it does not appear that they did. But it was within the spirit and intent of the rule prescribed to them, though not perhaps of sufficient importance to be specially stated in the report, in addition to the rent of another store, to allow for loss of earnings for the few days occupied in the removal to and from the store, and this we think is all that the jury have done on that subject.

The other objection is, that the jury were directed to allow the whole estimated cost of rebuilding a new wall on the side of the store next to the street, although the complainant was tenant of part of the tenement only, to wit, of the lower floor and cellar, and that for a term of three years. The Court are of opinion that this direction was wrong ; and in this opinion, upon some consideration, I concur.

The damage actually suffered by the complainant, was the actual loss of the use of his tenement, for upwards of two years during which the store was suffered to remain unrepaired and unfit for occupation for any purpose, and until it was taken down and rebuilt by Parks, the landlord. But inasmuch as this had been so left for an unnecessary length of time, for which the city were not responsible, it was considered and decided

by the Court, in the former case, that the complainant could not recover his whole rent for that long period. Then the question was, how could he have indemnified himself, had he acted promptly and according to his legal rights. The obvious answer was, that he might have built a new wall, and resumed the occupation of the tenement, in its diminished dimensions ; and this was the least expensive mode in which he could probably have obtained indemnity. This then was the hypothetical case upon which the damages were estimated, and one question was, what would it have cost him to rebuild the wall. Now as it must have been carried up to the roof, in order to protect his own premises, and as he could have no legal claim for contribution, either from the tenants of the upper tenements or from the ground landlord, he must have borne the whole expense himself, and therefore it seemed reasonable that he should now have a right to claim that whole expense from the city. But I am satisfied, on reflection, that this last conclusion was a *non sequitur*. It is true that he must have borne the whole expense himself, and that he would have had no claim for contribution ; and therefore, if he had in fact built the wall, he would have been entitled to recover the whole cost from the city. But he did not in fact build the wall, and the difference to the city is this ; if he had proceeded at once, as it was hypothetically assumed, in the estimate of damages at the trial, that he might have done, then the wall would have enured to the benefit of the upper tenants and of the ground landlord, and would *pro tanto* have diminished their claim of damages upon the city. But inasmuch as the complainant did not in fact put up the wall, but left the other parties interested in the estate, to make their full claims for damages, on the city, we think the complainant can only recover such proportion of the estimated expense of the wall, as his interest bore to the whole value of the estate, upon an equitable principle of apportionment. This principle being applied to the case of each of the parties claiming damages, neither of whom did the service of putting up the wall, for the common benefit, the city will pay and the several parties will receive a fair indemnity.

The jury in their estimate, having been requested to distin-

Patterson
<br>v.
<br>Boston.

guish what proportion of the cost of the wall was applicable to the premises of the complainant, and what proportion to the second and third stories, have done so, putting down $325 as the proportion to the lower floor and cellar, and $125 each to the second and third stories. The two sums therefore of $125, making $250, with the interest, must be deducted. Of the $325, such proportion ought to be allowed to the complainant, as his leasehold interest bears in value to that of the reversion, and the balance, with the interest thereon, to be deducted from the verdict. If, for instance, the value of the leasehold was to the whole estate, a third, fourth, fifth or any other proportion, that proportion of $325, and the interest, is to be allowed to the complainant, and the balance to be deducted from the verdict as it now stands. This proportion can probably be agreed on by the parties, or if they prefer, an assessor may be appointed to settle that single question, upon which the verdict may be amended.

By a provision in the Revised Statutes, which have been passed since these proceedings have been commenced, the damages for the whole are to be assessed, and where one is entitled to an estate for life or years, and another to the remainder or reversion, the damages shall be equitably apportioned between them. Revised Stat. c. 24, § 12. This will tend for the future to prevent one of the difficulties which have been felt in the present case, arising from the necessity of settling the damages of each claimant separately.